UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>— against —<br><br>STEFISHA MILLER,<br><br>Defendant. | 18-cr-202 (ARR)<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

On September 21, 2018, defendant Stefisha Miller submitted motions *in limine* to admit defense theory evidence and preclude argument and expert testimony by the government. The government opposes the defendant's requests. For the reasons set forth below, the defendant's motions are granted in part. Further, both the defendant and the government are directed to submit additional information to the court.

## BACKGROUND

On April 8, 2018, Stefisha Miller took a flight from Kingston, Jamaica, to JFK Airport. She had with her a duty-free box containing three liquor bottles. After her arrival at JFK, U.S. Customs and Border Protection officers discovered that two of the three liquor bottles in the duty-free box contained cocaine. The government has charged Stefisha Miller with one count of importing 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 952 and 960, and one count of possessing 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 841. *See* Indictment, ECF No. 8.

The defendant claims that she did not know that the duty-free box contained cocaine. According to the defendant, "she agreed to bring the liquor into the United States at the request

1

of her daughter's godfather, Derven Patterson; . . . Patterson went with her to the duty-free shop in Kingston (*i.e.*, the Bijoux shop); . . . Patterson chose and paid for the liquor, but . . . Ms. Miller signed for it because she was the one traveling; . . . the duty-free shop sent the order to the airport; . . . when Ms. Miller arrived at the airport, she showed the receipt to the duty-free office before her flight and was presented with a sealed box; [and] . . . a man from the office took the box through security and gave the box to her when she boarded the aircraft." Def. Mot. in Lim. 3, ECF No. 36 ("Def. Mot."). The government intends to argue at trial that the defendant knew that the duty-free box contained cocaine. Gov't Opp'n Def. Mot. in Lim. 3, ECF No. 38 ("Gov't Opp'n").

Jury selection and trial is set for November 13, 2018. On September 21, 2018, the defendant moved *in limine* to admit fact-witness testimony about the applicable duty-free process in Jamaica, to admit a copy of the Bijoux store's duty-free receipt as a foreign record certified by Bijoux employee Balkis Stanton, to preclude the government from arguing that "blind couriers" do not exist, and to preclude the government from introducing expert testimony about the role of a courier in a drug-trafficking organization. *See* Def. Mot. 2-7. On October 5, 2018, the government submitted an opposition to the defendant's motion. *See* Gov't Opp'n. On October 12, 2018, the defendant replied to the government's opposition. *See* Def. Reply to Gov't Opp'n, ECF No. 39 ("Def. Reply"). For the reasons that follow, I grant the defendant's motion to admit the fact-witness testimony. In addition, the parties are directed to submit the following to the court by 10:00am on October 22, 2018: the defendant should elaborate on the basis of Ms. Stanton's familiarity with Bijoux's recordkeeping procedures, as well as provide confirmation that a declaration certified by a Justice of the Peace in Jamaica subjects an individual to criminal

penalties; and the government should provide details regarding the anticipated subject matter of its expert's testimony.

**DISCUSSION**

The defendant moves to 1) admit fact-witness testimony about the duty-free process in Jamaica, 2) admit a copy of the Bijoux store's duty-free receipt, and 3) preclude the government from introducing expert testimony and related arguments. I will address each motion in turn.

**A. Fact-witness testimony about the duty-free process in Jamaica**

The defendant seeks to introduce the testimony of a defense investigator under Federal Rule of Evidence ("FRE") 401 to corroborate the defendant's narrative regarding "how the duty-free process works for liquor purchased at Bijoux in Jamaica." Def. Mot. 3. Specifically, the defense investigator is expected to testify that, in August 2018, the investigator went through a process of purchasing three bottles of duty-free liquor from Bijoux and bringing that liquor to JFK in a manner that "was the same in every material respect" to the defendant's account of her experience. *Id.* Notably, the defendant and the investigator describe a duty-free process in which a purchaser transports bottles of alcohol from Jamaica to the United States without ever handling the bottles herself.

Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible, with certain exceptions. *See* Fed. R. Evid. 402. The parties agree that the defendant's knowledge is a fact of consequence in determining the action, *see* Def. Mot. 3; Gov't Opp'n 3-4, but the government argues that the investigator's testimony is irrelevant because it "does not make it more or less likely that the defendant knew that there was cocaine in the bottles," Gov't Opp'n 4. The following chain of

3

inferences demonstrates that the investigator's testimony is plainly relevant: if the investigator went through the same duty-free process as the defendant, it is more likely that the defendant actually went through that duty-free process; if the defendant actually went through that duty-free process, it is more likely that the defendant went through a duty-free process in which she never handled the bottles herself; if the defendant never handled the bottles herself, it is more likely that she lacked knowledge of what was in the bottles. Thus, because the investigator's testimony makes the defendant's knowledge less probable, it is relevant and admissible.

The government argues against the admission of the investigator's testimony because "[t]he government has neither asserted nor indicated an intention to argue that the duty-free process in Jamaica is 'implausible.'" Gov't Opp'n 4 (quoting Def. Mot. 4). However, the duty-free process the defendant describes, in which a traveler purchases duty-free items from a store not at the airport and then picks up the items at the airport, may seem implausible to a jury. *See* Def. Mot. 4; Def. Reply 2 ("The jury may be inclined to discredit [Ms. Miller] based on the incorrect belief that her account is not how that process actually would work, as it is unlike what international travelers usually encounter when buying something at a duty-free shop."). As discussed above, evidence corroborating the legitimacy of the duty-free process is relevant, and it is particularly relevant here where the unusual nature of the process may lead jurors to call its legitimacy into question.

The government suggests that the defendant should introduce different evidence about the Jamaica duty-free process. *See* Gov't Opp'n 4-5 ("[T]he defendant is free to locate and hire an expert witness that has actual knowledge or experience regarding the duty-free process in Jamaica, and certainly one that has experience beyond that with the Bijoux Duty Free Store. Additionally, . . . the defendant may request . . . the use of a letter rogatory . . . ."). However, the

fact that the defendant *can* introduce other evidence does not mean that she *must* do so, *see* Def. Reply 3, nor does it preclude her from introducing the investigator's relevant testimony. The government is free to challenge the investigator's testimony at trial. *See, e.g.*, *id.* (noting that the government's critiques of the investigator's testimony go to weight, not admissibility).

## B. Bijoux store's copy of the duty-free receipt

The defendant seeks to admit the Bijoux store's copy of her duty-free receipt (Def. Mot. Ex. B) under the foreign-records exception to the hearsay rule in order to "rebut the government's position that Ms. Miller's 'purported duty-free receipt' was somehow illegitimate." Def. Mot. 4 (citation omitted). The foreign records exception states:

> In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—
>
> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
>
> (B) such record was kept in the course of a regularly conducted business activity;
>
> (C) the business activity made such a record as a regular practice; and
>
> (D) if such record is not the original, such record is a duplicate of the original;
>
> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1). Along with the Bijoux receipt, the defendant submits a foreign certification by Balkis Stanton, a Bijoux warehouse supervisor who is "familiar with the records of duty-free sales to Bijoux customers, including how the records are kept by Bijoux." Def. Mot. Ex. B, at 3. The Stanton certification states that (A) the Bijoux receipt was issued on April 7,

2018, from Bijoux to the defendant, (B) the receipt was kept in the course of Bijoux's regularly conducted business activity, (C) the receipt was made as part of Bijoux's regular business practice, and (D) the receipt is a duplicate of the original. *Id.* Thus, the defendant argues, the certification meets the requirements of § 3505(a)(1). *See* Def. Mot. 4. The government does not dispute the relevance of the Bijoux receipt but argues that it is not admissible because Ms. Stanton lacks sufficient knowledge of the sale under § 3505(a)(1)(A). *See* Gov't Opp'n 6.

"Certification pursuant to § 3505 is just one option available to litigants to authenticate business records, as set forth in [FRE] 803(6)." *United States v. Qualls*, 553 F. Supp. 2d 241, 245 (E.D.N.Y. 2008). The language of § 3505 "tracks quite closely to the language of Federal Rule of Evidence 803(6)" and "should be interpreted in the same manner as the comparable language in Rule 803(6) is interpreted." *United States v. Chan*, 680 F. Supp. 521, 523 (E.D.N.Y. 1988) (quoting H.R. Rep. No. 98-907, at 5 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3578, 3581). Neither FRE 803(6) nor § 3505 requires that the certifying witness have personal knowledge of the creation of the business record; rather, the witness need only have knowledge of the relevant recordkeeping procedures. *See United States v. Sturman*, 951 F.2d 1466, 1489 (6th Cir. 1991) (interpreting § 3505); *United States v. Marcos*, No. SSSS 87 CR. 598 (JFK), 1990 WL 37845, at *5 (S.D.N.Y. Mar. 27, 1990) (same); *see also United States v. Komasa*, 767 F.3d 151, 157 (2d Cir. 2014) ("'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation [under FRE 803(6)].") (quoting *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995)); *United States v. Williams*, 205 F.3d 23, 34-35 (2d Cir. 2000). Thus, Ms. Stanton need not have personal knowledge of the actual creation of the duty-free receipt; however, the court requests that Ms. Stanton provide additional details regarding the nature and extent of her experience with Bijoux's bookkeeping process.

The government also argues that the Bijoux receipt should not be admitted because it lacks trustworthiness. *See* Gov't Opp'n 5-6; *see also* § 3505(a)(1). To support its claim, the government points to the fact that the type of rum on the receipt does not match the type of rum in the duty-free box, and that two of the liquor bottles contained cocaine, not rum or rum cream. *See* Gov't Opp'n 5-6. The Second Circuit takes a "generous view" of the business-records exception, so long as the record was kept in the course of a regularly conducted business activity and it was the regular practice of the business to make the record. *See Hamad v. Cook*, No. 13 Civ. 3222(MHD), 2014 WL 3507340, at *5 (S.D.N.Y. June 30, 2014) (quoting *Mason Tenders Dist. Council v. Aurash Constr. Corp.*, No. 04 Civ. 2427(RCC), 2005 WL 2875333, at *2 (S.D.N.Y. Oct. 31, 2005)); *see also United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (noting that Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000))). The purpose of the trustworthiness requirement in FRE 803(6) (and therefore § 3505) is to "ensure that documents were not created for personal purpose[s] . . . or in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question." *Kaiser*, 609 F.3d at 574 (citation and quotations omitted). The mismatch between the receipt and the contents of the duty-free box does not sufficiently demonstrate that the document was falsely created. Thus, the government's argument that the receipt should be excluded for lack of trustworthiness fails. *Cf. United States v. Tin Yat Chin*, 371 F.3d 31, 37-38 (2d Cir. 2004) (admitting credit card receipts under FRE 901 despite doubts about their reliability and noting that "the other party . . . remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*.").

Under § 3505(c)(2), the foreign certification must be "made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country." The defendant claims that the certification "was made in the form of a standard 'voluntary declaration,' certified by a Justice of the Peace, which [the defendant's counsel] are advised by Jamaican counsel subjects the declarant to penalty of perjury under Jamaican law." Def. Mot. 4. The § 3505(c)(2) requirement is critical, because "[t]he trustworthiness of the foreign certification depends essentially on the deterrent force of the criminal law of the foreign country." *Chan*, 680 F. Supp. at 523. "The court may take judicial notice of foreign law and legal terms under Rule 26.1 of the Federal Rules of Criminal Procedure, considering any relevant source whether or not submitted by a party." *Id.* at 524; *see also* Fed. R. Crim. P. 26.1 advisory committee note to 1944 addition ("Rule 26.1 is substantially the same as Civil Rule 44.1."). "Written or oral expert testimony accompanied by extracts from various kinds of foreign legal materials remains the basic mode of proving foreign law." *Bigio v. Coca-Cola Co.*, No. 97 Civ. 2858(BSJ), 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015); *Panam Mgmt. Grp., Inc. v. Pena*, No. 08-CV-2258(JFB)(ARL), 2011 WL 3423338, at *4 (E.D.N.Y. Aug. 4, 2011). However, courts have relied on a variety of sources in determining questions of foreign law, including affidavits, foreign case law, and student notes. *See, e.g.*, *United States v. Mitchell*, 985 F.2d 1275, 1280 (4th Cir. 1993) (collecting cases). "Jamaican counsel's advise[ment]" regarding the significance of a declaration sworn before a Justice of the Peace is not sufficient for this court to take judicial notice of Jamaican law. Thus, the defendant is directed to provide additional documentation in support of her position.

## C. Government's expert testimony and related arguments

### 1. Blind couriers do not exist

The defendant moves to preclude the government from arguing that blind couriers do not exist. *See* Def. Mot. 5-6. The government's opposition demonstrates that they do not intend to make this inappropriate argument. *See* Gov't Opp'n 7 ("Arguing that a drug distributor is unlikely to entrust something of such substantial value to someone who does not know of its existence is not the same as definitively asserting that 'so-called "blind couriers" do not exist.'" (quoting Def. Mot. 5)); *see also United States v. Jobin*, 327 F. Supp. 2d 310, 313-15 (D. Vt. 2004) (excluding expert testimony that drug smugglers never use unwitting couriers under FRE 403 and 702 and noting that "[t]here is a significant difference between . . . testifying that drug smugglers *often* or *typically* use paid couriers and . . . testifying that they *never* use unwitting couriers"). Thus, while the government should not assert that blind couriers do not exist, it can make arguments about the likelihood of the defendant's knowledge.

### 2. The quantity and value of the cocaine seized

The government seeks to admit expert testimony regarding the quantity and value of the cocaine seized. *See* Gov't Opp'n 6-7. The defendant does not object to this testimony insofar as it "is relevant to an element the government must prove beyond a reasonable doubt." Def. Mot. 6. Expert testimony on drug quantities and values are admissible when they are relevant to the charged crimes because they are "beyond the ken of the average juror." *See United States v. Vertil*, 566 F. App'x 36, 39 (2d. Cir. 2014) (quoting *United States v. Tapia–Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994)). Thus, the government's expert witness may testify to the quantity and value of the cocaine seized.

### 3. The role of a courier in a drug-trafficking organization

The defendant requests that expert testimony about the role of a courier in a drug-trafficking organization be precluded. *See* Def. Mot. 6-7. The government argues that this testimony is relevant and permissible. *See* Gov't Opp'n 8-9. The government cites a number of cases that correctly stand for the proposition that expert testimony regarding the international drug trade is admissible. However, while "[t]he government is free to offer expert testimony both as background for an offense and to assist in proving one or more elements of the offense," the government cannot "ask the jury to find that because criminals of a certain type classically engage in a certain kind of behavior, the defendant engaged in that behavior." *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001); *see also United States v. Cruz*, 981 F.2d 659, 663-64 (2d Cir. 1992) (finding it "impermissible" for the government to "elicit[ expert] testimony from an officer as to various routine acts in drug transactions . . . and then argue[] that the defendants were guilty because the government's witnesses testified that the defendants [engaged in those routine acts]" (quoting *United States v. Castillo*, 924 F.2d 1227, 1231-32 (2d Cir. 1991)); *United States v. Nektalov*, No. S203CR.828 (PKL), 2004 WL 1469487, at *3 (S.D.N.Y. June 30, 2004). Thus, while the government can have an expert testify about the use of couriers and common practices, the testimony must serve a purpose beyond simply "bolster[ing] the government's fact witnesses." *See United States v. Denny*, No. 97-1485, 1998 WL 391104, at *1 (2d Cir. May 20, 1998). The court does not currently have enough information to determine the admissibility of the expert's testimony. The government is therefore directed to provide the court with a detailed description of the expert's testimony and an explanation why each element of the testimony is admissible.

## CONCLUSION

For the reasons stated in this opinion, the defendant's motion to admit fact-witness testimony about the duty-free process in Jamaica is granted. In addition, by 10:00am on October 22, 2018, the defendant will file a submission that includes a statement from Ms. Stanton regarding her experience, as well as additional information on the consequences of a declaration certified by a Justice of the Peace in Jamaica, and the government will submit a detailed outline of the anticipated subject matter of its expert's testimony with support for its admissibility.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: October 15, 2018
Brooklyn, New York